Nicholas Urbano *v.* Zoning Hearing Board of Upper Merion Township.

Argued February 9, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Joseph L. Torak,* with him *E. William Heuser,* and *Torak, Heuser & Grant,* for appellant.

*Gregory J. Dean,* with him *James E. Meneses,* for appellee.

OPINION BY JUDGE WILKINSON, April 13, 1971:

In November of 1968, Marriott Hot Shoppes, Inc.—Royal Properties, Inc., lessee of the owner, Nicholas Urbano, applied to the Upper Merion Township Board of Adjustment for a variance to remove three buildings existing on the site and construct thereon one building to be used as a restaurant. The record shows that the type building to be built by Marriott was the familiar

"Hot Shoppes Jr." erected by that company. The application stated that the building was to be a "conforming building and to continue therein a lawful, nonconforming restaurant use."

A hearing was held on January 28, 1969, and a decision was rendered March 12, 1969, denying the application for a variance. Appellant, Urbano, filed an appeal to the Court of Common Pleas of Montgomery County on April 11, 1969.

Urbano's name appeared on the application for a variance as the owner but not as an applicant. At the hearing before the Board, the chairman of the Board asked if "the applicant or his representative" were present. Morris Gerber, Esquire, responded that he represented the applicant, Marriott Corporation. If Urbano were present or represented by counsel, neither spoke up nor participated in the hearing. The applicant's witnesses were Don Nolan, project manager for the Marriott Corporation in Pennsylvania and New Jersey, and James Rudd, manager of Real Estate and Development of Marriott Corporation. As would be apparent from their titles, these gentlemen testified as to what Marriott would build and how Marriott would operate if its application for a variance were granted. The application was denied.

The applicant, Marriott Corporation, did not appeal. In his brief filed with this Court, appellant states that this was because Marriott "would not pay for taking the appeal." Before the lower court it was stated that Marriott did not appeal because of the "expiration of the lease agreement upon which the application was based." The appeal to the Common Pleas Court was filed by the owner, Urbano, whose name had appeared on the application as an owner but not as an applicant and who had not participated in a hearing before the Board either in person or by counsel. The Board could not have granted him the variance, and

indeed, there is not a word in the record before the Board to support what he would do if the variance were granted to him. All the testimony related to what Marriott would do.

On oral argument on December 31, 1969, the court below was informed that the lease upon which Marriott had based its application had expired and that, therefore, the question of the validity or invalidity of the decision of the Board on granting or denying the application for a variance was moot. Accordingly, the court below dismissed the appeal. We must affirm the decision to dismiss.

Section 1006 of the Pennsylvania Municipalities Planning Code provides that the owner can intervene in an appeal by filing a notice of intervention, accompanied by a proof of service upon each appellant. Act of July 31, 1968, P. L. , No. 247, Art. X, §1006, 53 P.S. 11006. See Ryan, Pennsylvania Zoning (1970), Section 9.5.5. Urbano did not do this, perhaps for the very good reason that there was no appellant or any appeal in which to intervene. See *Appeal of Greco*, 434 Pa. 431, 254 A. 2d 6 (1969).

The Court does not express any opinion on the propriety or impropriety of the action of the Board of Adjustment or on the dicta expressed in the order filed by the court below.

Appeal dismissed.